UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LILIANA CAMACHO,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK,<br><br>Defendant. | Case No. 5:14-cv-04048-EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 26 |

After the death of her husband, Plaintiff Liliana Camacho ("Plaintiff") was unable to collect life insurance benefits because the policy had been cancelled for lack of payment. She later found out that Defendant JPMorgan Chase Bank ("Chase") had ceased making the monthly premium transfers to the insurance company. Plaintiff initiated this lawsuit against Chase to recover the life insurance benefits.

According to Plaintiff's operative pleading, federal jurisdiction arises pursuant to 28 U.S.C. § 1331. Presently before the court is Chase's Motion to Dismiss the claims asserted in the First Amended Complaint ("FAC"). See Docket Item No. 26. Plaintiff opposes the motion. See Docket Item No. 31.

Having carefully considered the parties' arguments, the court has determined that Plaintiff has not and cannot state a claim under the one federal statute raised in the FAC. As such, Chase's motion to dismiss will be granted and Plaintiff's federal claim will be dismissed without leave to amend. Her remaining claims under state law will be dismissed without prejudice.

I.   **BACKGROUND**

Plaintiff married Jairzihno C. Mora in 2008. See FAC, Docket Item No. 21, at ¶ 8. Both

1    she and Mr. Mora were customers of the Chase branch located in Greenfield, California. Id. Mr.

2    Mora maintained an account at the Greenfield Chase branch with a balance of approximately

3    $30,000. Id. at ¶ 9.

4        Plaintiff and Mr. Mora also owned several insurance policies issued by State Farm

5    Insurance, including automobile insurance and a policy insuring Mr. Mora's life. Id. at ¶ 10. Mr.

6    Mora authorized Chase to make monthly fund transfers from his bank account to State Farm to

7    pay for the insurance policies. Id. at ¶¶ 10, 11.

8        However, in December, 2012, Chase stopped making the automatic payments to State

9    Farm. Id. at ¶ 12. Plaintiff alleges Chase did this without authorization and without notice to

10   Plaintiff or Mr. Mora. Id. She further alleges on information and belief that a Chase teller

11   mistakenly cancelled the debit card associated with the electronic transfers, and that she and Mr.

12   Mora could not have known of the cancellation because Chase failed to send them monthly

13   account statements in December, 2012, and January, 2013. Id. at ¶¶ 13, 14. Plaintiff and Mr.

14   Mora eventually discovered the cancellation and were issued a new debit card. Id. at ¶ 15.

15   Despite the issuance of a new debit card, Chase did not advise merchants who were receiving

16   recurring payments that those recurring payments should be made through the new card number.

17   Id. at ¶ 16. Nor did Chase advise Plaintiff or Mr. Mora to contact any of the merchants receiving

18   recurring payments. Id.

19       As a result of the non-payment, the State Farm insurance policies were cancelled. Id. at ¶

20   18. In January, 2013, State Farm telephoned Plaintiff and notified her that the automobile

21   insurance policies had been cancelled. Id. Plaintiff was able to reinstate those policies over the

22   phone, and Chase began to again make monthly electronic premium transfers to pay for these

23   policies. Id. at ¶¶ 18, 19. As to the life insurance policy, Plaintiff alleges that State Farm sent a

24   written notification about the cancellation of that policy to Mr. Mora, which he never received. Id.

25   at ¶ 18. Thus, unaware that it had lapsed, neither Plaintiff nor Mr. Mora reinstated the policy. Id.

26       Mr. Mora was killed in a motorcycle accident on April 17, 2013. Id. at ¶ 20. Plaintiff

27   spoke to State Farm within a few days of Mr. Mora's death and only then learned the life

28

2
Case No.: 5:14-cv-04048-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1  insurance policy had lapsed due to non-payment.  Id.  She did not learn the full details of the

2  policy's termination until October, 2013, after she obtained a Spousal Property Order from the

3  probate court.  Id. at ¶ 22.

4  Plaintiff made several efforts to understand why Chase stopped making payment on the life

5  insurance policy, and eventually obtained the account statements in October and November, 2013.

6  Id. at ¶¶ 25, 26.  She commenced this lawsuit on September 5, 2014, asserting claims for (1)

7  violation of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1601, (2) breach of contract,

8  (3) negligence, and (4) breach of fiduciary duty.  Plaintiff then filed the FAC on December 1,

9  2014.  This motion followed.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).  A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).  Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face."  Twombly, 550 U.S. at 556-57.  When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings."  Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice.  See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001).

In addition, the court must generally accept as true all "well-pleaded factual allegations."  Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009).  The court must also construe the alleged facts in the light most favorable to the plaintiff.  Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988).

3
Case No.: 5:14-cv-04048-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Id.

### III. DISCUSSION

#### A. Plaintiff Cannot State a Claim under the EFTA

Chase argues that Plaintiff cannot state a claim under the EFTA due to a combination of timing obligations, one imposed on consumers by the EFTA and one imposed on account holders by the Account Rules and Regulations ("ARRs") governing consumer accounts with Chase. Chase is correct that Plaintiff's claim fails under these provisions.

The court begins with the statute. As its name implies, "[t]he EFTA creates a 'framework [of] rights, liabilities, and responsibilities of participants in electronic fund transfer systems.'" Sanford v. MemberWorks, Inc., 625 F.3d 550, 560 (9th Cir. 2010) (quoting 15 U.S.C. § 1693(b)). In a basic sense, the EFTA allows consumers to preauthorize electronic transfers of funds from accounts they hold at financial institutions. See 15 U.S.C. § 1693e. These financial institutions must thereafter provide to consumers documentation evidencing the transfers on a periodic basis. See 15 U.S.C. § 1693d.

The EFTA contains an error resolution process which obligates consumers to report transfer errors to financial institutions within 60 days after having been transmitted the written documentation containing the error. 15 U.S.C. § 1693f(a). For the purposes of this provision, an "error" includes either an unauthorized, incorrect or omitted transfer of funds. 15 U.S.C. § 1693f(f). The financial institution must investigate any timely-reported error and notify the consumer of the results within 10 business days. 15 U.S.C. § 1693f(a). "If the financial institution determines that an error did occur, it shall promptly, but in no event more than one business day after such determination, correct the error . . . including the crediting of interest where applicable." 15 U.S.C. § 1693f(b). However, a financial institution is not liable "for losses the financial institution establishes would not have occurred but for the failure of the consumer to report within sixty days of transmittal of the statement (or in extenuating circumstances such as extended travel or hospitalization, within a reasonable time under the circumstances) any

unauthorized electronic fund transfer or account error which appears on the periodic statement." 15 U.S.C. § 1693g(a).

Also relevant are particular provisions of Chase's ARRs, a document which Plaintiff admits governed Mr. Mora's account. See FAC, at ¶ 10, Ex. G. The section entitled "Statements" provides, in pertinent part:

> We will maintain appropriate records of your Account. An Account statement for checking and savings accounts will be sent to you at your current address listed on your records on a monthly basis . . . .

In addition, under the section entitled "Notification of Errors, Forgeries and Unauthorized Signatures," the ARRs state the following:

> You agree to reconcile your statement promptly upon receipt. If we honor a check, debit card, ATM or other item drawn or posted to your account that is altered in any way or was not drawn or otherwise authorized by you . . . or if your Account statement contains any errors, you agree to notify us in writing of such unauthorized item or error within 30 days of the date on which the unauthorized item, or the Account statement that contained a description of the unauthorized item or error, was mailed. . . . Failure to report an unauthorized item or error, or that you did not receive your scheduled statement, within the 30-day time set forth herein, or to abide by the conditions set forth herein, shall be deemed conclusive proof that you failed to exercise reasonable care and promptness in examining the items and statements of the affected Account and in notifying us of the unauthorized item or error. You agree that such items and errors shall therefore be fully enforceable against you and you shall have no claim against us for same and shall be barred from bringing any action against us that is in any way related to the unauthorized item or errors.[1]

Here, Plaintiff alleges that Chase stopped transferring funds from Mr. Mora's account to State Farm for the monthly life insurance premium in December, 2012. During that same timeframe, Plaintiff alleges that Chase stopped sending account statements to Mr. Mora, and that he did not receive an account statement for "the relevant time period of December 2012 to January 2013." See FAC, at ¶ 14. Thus, under Plaintiff's allegations, the critical account statement is the

---

[1] Notably, the ARRs also state: "If you provide authorization to a merchant to bill charges on a recurring basis to your Card, and if a replacement Card has been issued to you, you must provide that merchant with your new card number and/or expiration date in order to bill the recurring charges to your Card."

1   one covering the period from December 12, 2012, through January 10, 2013 (see FAC, at Ex. B),
2   since it is the first statement which would have contained the error.  That statement would also, in
3   turn, constitute Mr. Mora's first opportunity to learn that funds were not being transferred to State
4   Farm and triggered his obligation to act.

5         Since the ARRs provide for the disclosure of statements on a monthly basis, Mr. Mora
6   should have been aware no later than the latter half of January, 2013, that the statement covering
7   December and January was not received.  He had 30 days from that time to report the missing
8   statement to Chase under the ARRs' "Notification of Errors" provision.  Since it is not alleged that
9   Mr. Mora did so, the error, assuming it occurred, is no longer attributable to Chase and is fully
10  enforceable against Mr. Mora.  "Full enforcement" for the purposes of this analysis must mean
11  that Mr. Mora's timely receipt of the account statement is presumed.[2]

12        This leads to an unfortunate result for Plaintiff under the EFTA.  Pursuant to § 1693f, Mr.
13  Mora had 60 days from the latter half of January, or until an equivalent date in March, 2013, to
14  report the omitted transfer to Chase.  It is undisputed that he failed to make that report.  As such, §
15  1693g(a) precludes Chase's liability for the loss of life insurance proceeds because such loss
16  would not have occurred if Mr. Mora had reported the omitted transfer within the statutory period.
17  See Overby v. Chase Manhattan Bank, 351 F. Supp. 2d 219, 225 (S.D.N.Y. 2005) ("[U]nder the
18  Electronic Funds Transfer Act . . . plaintiff had a duty to notify Chase of any errors or
19  unauthorized transactions within 60 days after receiving documentation of the electronic transfer.
20  Because of plaintiff's failure to notify Chase within the required time period, he is now barred
21  from asserting any of his banking claims.").

22        In opposition to Chase's motion, Plaintiff attempts to shift the 60-day notice period from
23  early 2013 to later that year.  Plaintiff argues that, since she could not obtain the missing account
24  statements until she received the Spousal Property Order in October, 2013, her notice to Chase

---

[2] A similar finding could be made for the subsequent statements to the extent they are relevant since it is not alleged that Mr. Mora or Plaintiff ever notified Chase they were missing within 30 days of non-receipt.

6
Case No.: 5:14-cv-04048-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

shortly thereafter should be deemed timely.  This alternative scenario is incomplete, however, because it fails to account for the ARRs' 30-day notification period for missing statements.  As explained, responsibility for missing account statements had already shifted from Chase to Mr. Mora before Plaintiff obtained the Spousal Property Order and obtained the statements.  Her notice to Chase in October, therefore, was ineffective because the 60-day period under § 1693f had already concluded.

Plaintiff also relies on § 1693f's "extenuating circumstances" language as a basis to reframe the statute's notice requirement.  She claims that Chase's failure to provide account statements first to Mr. Mora and then to Plaintiff should be considered a qualifying extenuating circumstance.  Notwithstanding the fact that a failure to provide account statements is something distinguishable from the two examples cited § 1693f, this argument is unpersuasive in much the same way as its predecessor.  Indeed, the ARRs are clear that any error in the provision of statements becomes fully enforceable against the account holder if notice is not given to Chase within 30 days.  Classifying missing account statements as an "extenuating circumstance" to extend the § 1693f notice period after Mr. Mora failed to timely notify Chase under the ARRs would be inconsistent with the terms of the agreement that Plaintiff concedes governed Mr. Mora's account.

In sum, Plaintiff has not stated a claim against Chase under the EFTA.

**B.     Even if Stated, the EFTA Claim is Barred by the Statute of Limitations**

As an alternative argument, Chase contends Plaintiff's EFTA claim is barred by the statute of limitations even if adequately stated.  The court agrees.

Actions against financial institutions for failure to comply with the EFTA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1693m(g).  In cases involving unauthorized transfers, courts interpret § 1693m(g) to require that EFTA claims be filed within one year of the date of the first recurring transfer.  See, e.g., Wike v. Vertrue, Inc., 566 F.3d 590, 593 (6th Cir. 2009); Pelletier v. Pac. Webworks, Inc., No. CIV S-09-3503 KJM KJN, 2012 U.S. Dist. LEXIS 2468, at *16, 2012 WL 43281 (E.D. Cal. Jan. 9, 2012); Repay v. Bank of

7
Case No.: 5:14-cv-04048-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1  America, N.A., No. 12 CV 10228, 2013 U.S. Dist. LEXIS 168679, at *8-16, 2013 WL 6224641
2  (N.D. Ill. Nov. 27, 2013) (rejecting plaintiff's request to apply "continuing violations" doctrine to
3  EFTA claim and holding that § 1693m(g)'s statute of limitations begins to run on the date of the
4  first reoccurring transfer).

5      This case is somewhat distinct from others that have applied the § 1693m(g) statute of
6  limitations because rather than an unauthorized transfer, it involves a transfer that never actually
7  occurred but allegedly should have.  This distinction does not make a difference for operation of
8  statute of limitations, however.  "[A]s a 'standard rule,' the statute of limitations begins to run
9  'when the plaintiff has a complete and present cause of action' and thus 'can file suit and obtain
10 relief.'"  Wike, 566 F.3d at 593 (quoting Bay Area Laundry & Dry Cleaning Pension Trust Fund
11 v. Ferbar Corp. of Cal., Inc., 522 U.S. 192, 201 (1997)).  "Customarily, that is true when the
12 defendant breaches a duty (here a duty imposed by statute) and the claimant is injured."  Id.; see
13 Tworivers v. Lewis, 174 F.3d 987, 992 (9th Cir. 1999) ("Under federal law, a claim accrues when
14 the plaintiff knows or has reason to know of the injury which is the basis of the action.").

15     Here, as to Chase's breach of duty, Plaintiff alleges the first omitted transfer occurred in
16 December, 2012, and for reasons explained above, Mr. Mora is charged with notice of that
17 omission as of the latter portion of January, 2013.  As to injury, although the FAC does not reveal
18 the exact date that State Farm cancelled the life insurance policy, it must have been cancelled by
19 the time Mr. Mora passed away on April 17, 2013, if not before.  Thus, April 17th is the latest date
20 upon which the EFTA injury could have accrued.  Under the one-year statute of limitations, a
21 timely claim should have been filed no later than April 17, 2014.  This action, filed on September
22 5, 2012, is nearly five months too late.

23     Plaintiff seeks to avoid this result by invoking California's delayed discovery doctrine and
24 equitable estoppel.  But neither can assist her under these circumstances.  To the extent it applies
25 to a statute of limitations imposed by a federal statute, California's delayed discovery doctrine
26 only postpones the accrual of a cause of action until "the plaintiff has reason to suspect an injury
27 and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at

28

that time would not have revealed a factual basis for that particular cause of action." Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 803 (2005). Under these facts, a reasonable investigation conducted at the time Mr. Mora stopped receiving account statements would have revealed the omitted transfers to State Farm. Plaintiff's investigation after Mr. Mora's death, therefore, could not have postponed the accrual date.

Application of equitable estoppel is similarly unwarranted. Since Mr. Mora knew his account statements were not delivered when they should have been, it cannot be alleged that he was completely ignorant of the true facts. See Lukovsky v. City & Cnty. of San Francisco, 535 F.3d 1044, 1052 (9th Cir. 2008) (explaining that equitable estoppel requires, inter alia, that the party asserting the estoppel be ignorant of the true state of facts). Nor can it be plausibly alleged that Mr. Mora acted with reasonable diligence when he failed to report the missing statements within the timeframe permitted by the ARRs and, in turn, failed to timely report the omitted transfer to Chase. See Bernson v. Browning-Ferris Indus., 7 Cal. 4th 926, 936 (1994) ("The rule of equitable estoppel includes, of course, the requirement that the plaintiff exercise reasonable diligence.").

For these reasons, the court finds as a separate basis for dismissal that Plaintiff's EFTA claim was filed after expiration of the statute of limitations.

**C.    The EFTA Claim Cannot be Remedied with Additional Factual Allegations**

The court must now decide whether Plaintiff should be permitted leave to amend the EFTA claim.

"Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." Krainski v. Nevada ex rel. Bd. of Regents of Nevada System of Higher Educ., 616 F.3d 963, 972 (9th Cir. 2010) (internal citation and quotation marks omitted). Considering the deficiencies discussed above - particularly that Plaintiff cannot allege Mr. Mora provided Chase with notice of the omitted transfer within § 1693f notice period - the court concludes that the FAC cannot be remedied with additional factual allegations. The EFTA claim will therefore be dismissed without leave to amend.

### D. The Remaining Claims will be Dismissed for Lack of Jurisdiction

The dismissal of Plaintiff's sole federal claim raises the issue of continuing jurisdiction since there is no longer a federal question apparent from the face of the FAC.

The jurisdiction of federal courts is limited, and is only properly exercised over those cases raising federal questions or involving parties with diverse citizenship. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). "[O]nce a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." Id. However, a district court may properly decline to exercise supplemental jurisdiction over state-law claims if such claims "substantially predominate[] over the claim or claims over which the district court has original jurisdiction" or if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

Having determined that Plaintiff's EFTA claim should be dismissed with prejudice, all that remains are claims based in state law. The court therefore finds that state-law issues substantially predominate at this point and declines to exercise supplemental jurisdiction over the remaining claims. They will be dismissed without prejudice. See 28 U.S.C. § 1367(c)(3); see also Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir. 1997) (en banc); see also Freeman v. Oakland Unified Sch. Dist., 179 F.3d 846, 847 (9th Cir. 1999) ("Dismissals for lack of jurisdiction 'should be . . . without prejudice so that a plaintiff may reassert his claims in a competent court.'").

## IV. ORDER

Based on the foregoing, Chase's Motion to Dismiss (Docket Item No. 26) is GRANTED. The EFTA claim is DISMISSED WITHOUT LEAVE TO AMEND. The remaining claims are DISMISSED without prejudice. The Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: September 9, 2015



EDWARD J. DAVILA
United States District Judge

10

Case No.: 5:14-cv-04048-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS